UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROB D. NEW,

Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

Defendant.

23 Civ. 9371 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

On October 24, 2023, Plaintiff Rob D. New ("Plaintiff" or "New") initiated this action by

filling the Complaint. *See* Compl., ECF No. 1. Plaintiff brings claims against JPMorgan Chase

Bank, N.A. ("Defendant" or "Chase") regarding the alleged theft of nine million dollars from his

Chase bank account by Chase employees. Defendant filed two motions, a motion to dismiss or,

in the alternative, a motion to compel to arbitration, ECF No. 11, and a motion to transfer the

case, ECF No. 46. For the reasons set forth below, Defendant's motion to transfer is

**GRANTED.**

## BACKGROUND

### I.    Factual History

#### a.    *The Film Financing Fraud*

In 2014, nonparties Benjamin McConley ("McConley") and Jason Van Eman ("Van

Eman") began a scheme to defraud investors into investing in false film projects. *See* Compl. ¶

18.[1] In 2017, McConley and Van Eman began working with John Torres ("Torres"), who was a

---

[1] Unless otherwise indicated, the facts set forth herein are taken from the Complaint and are
accepted as true for purposes of resolving Defendant's motion. *See Hiroki Takahashi v. Cuyco,*
No. 15 Civ. 3763, 2018 WL 1525648, at *1 n.2 (E.D.N.Y. Mar. 27, 2018); *Garrel v. NYLCare
Health Plans, Inc.*, No. 98 Civ. 9077, 1999 WL 459925, at *1 (S.D.N.Y. June 29, 1999) ("The

Vice President at Chase Bank, and, later, Ray Davido ("Davido"), a banker at Chase.  *See* Compl. ¶¶ 2-6, 47, 100-105.

New was one of the victims of this scheme, who invested in the fake film "Bleed Into One."  *See* Compl. ¶ 43; ECF No. 12-2.  New was presented with a Funding Agreement (the "Agreement"), which "guaranteed that the investor's cash contributions would be in a secure account at [Chase] and would not be transferred without the investor's consent."  Compl. ¶ 21; *see generally* ECF No. 12-2.  The Agreement was fully executed on June 9, 2017, and signed by Larry M. New[2] on behalf of Worldwide Film Productions, LLC ("Worldwide"),[3] Van Eman on behalf of Weathervane Productions, Inc. ("WVP"), McConley on behalf of Forrest Capital Partners, Inc. ("FCP"), and Neal Edelstein, Charles Leslie, and Naveen Chathappuram on behalf of Bleed Into One, LLC.  *See* ECF No. 12-2 at 14-22.

On June 20, 2017, New's $9,000,000 was wired to McConley's account under the guise that it was "secure" and legitimate.  *See* Compl. ¶ 69.  Although the Funding Agreement was between Worldwide, FCP, and WVP, the Chase funds were transferred from New's personal bank account, not via a Worldwide account.  *See* ECF No. 48 at 1; *see also* ECF No. 12-4 ¶ 19.  McConley and Van Eman continued to defraud five victims, who had a total of $17 million stolen.  *See* Compl. ¶ 6.

### b.  *The Role of Chase Bank*

While Chase was not a signatory of the Agreement, Plaintiff contends that Chase's role in transferring funds from New to McConley and Van Eman was integral in creating a false sense

---

facts alleged in the Complaint are assumed to be true for the purpose of deciding this [28 U.S.C. §1404(a)] motion.").

[2] Larry M. New is Plaintiff New's father.  *See* ECF No. 12-4 ¶ 5.

[3] New is Worldwide's sole owner, manager, and principal.  *See* ECF No. 12 at 1; ECF No. 25 at 6.

of security that the transactions were legitimate.  *See* Compl. ¶¶ 43-44, 65.  For example, the Funding Agreement specifically noted, "FCP and WVP have informed C[hase] Bank of the terms and conditions of this Agreement, and C[hase] Bank has confirmed to FCP and WVP that it intends to comply with all of the terms of this Agreement upon its receipt of a fully executed copy of this Agreement."  ECF No. 12-2 § 11.B.(5).  Additionally, one of the conditions precedent to the agreement required, "[Worldwide's] receipt of the written confirmation from C[hase] to [Worldwide] in the form of a bank letter on Chase letterhead in a form approved by [Worldwide] that confirms, amongst other things, that C[hase] shall only act . . . in accordance with the provisions of this Agreement[.]"  *Id.* § 3.A.

Of particular relevance here, the Funding Agreement also required that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach . . . thereof . . . shall be determined by binding arbitration in Miami, Florida before one arbitrator selected pursuant to the JAMS rules and procedures."  *Id.* § 14.B.  Additionally, the Agreement noted, "This Agreement has been made in and shall be interpreted and governed by the laws of the State of Florida."  *Id.* § 14.A.

In order to obtain the required notices, accounts, and letters from Chase to ensure the transfer of funds from New, from about June 2017 until about July 2018, Torres participated in this scheme in his capacity as Vice President at a Chase branch in Woodland Hills, California by opening a bank account on behalf of McConley, writing false and misleading statements, and holding misleading meetings.  Compl. ¶¶ 15, 51-87.  In exchange, McConley paid Torres approximately $400,000 and took him "on a private jet, trips to Miami, Florida at the Ritz Carlton and to Las Vegas."  Compl. ¶¶ 90, 94, 98-99.  In October 2017, Davido also helped leverage his Chase employee status to send false emails and statements to Plaintiff to further the fraud.  *See* Compl. ¶¶ 100-103.  McConley, Van Eman, and Torres stole $9 million dollars from

3

Plaintiff for personal gain; Plaintiff has recovered some, but not the full amount.  *See* Compl. ¶¶ 106, 110.

## II.    Procedural History

### a.    *The California Action and JAMS Arbitration*

On December 5, 2019, Worldwide sued Chase, Torres, and Davido in the U.S. District Court for the Central District of California ("California Action").  *See* ECF No. 12 at 7; ECF No. 25 at 6.  The California Court compelled the dispute to arbitration in Florida before JAMS on March 13, 2020, because the Funding Agreement included an arbitration clause.  *See* ECF No. 12 at 7.

On July 16, 2020, Worldwide filed a Demand for Arbitration and the dispute was arbitrated in Miami, Florida.  ECF No. 39 at 2.  Three years later, on July 21, 2023, Chase and the other defendants filed a Motion for Summary Disposition that argued that Worldwide lacked standing because the funds belonged to New, not Worldwide.  *Id*.  On October 2, 2023, the Arbitrator agreed, finding that "Worldwide lacked standing since the allegedly stolen $9 million in issue belonged, not to Worldwide, but to its sole owner, manager, and control person, Rob New."  ECF No. 12 at 8; *see also* ECF No. 12-4 ¶¶ 23, 30.  Chase filed a petition to confirm the JAMS final award in Florida.  ECF No. 12 at 8.  Neither Worldwide nor New filed a motion to vacate, modify, or correct the award in Florida.  *Id.*

At the same time, the California Action remained pending during the arbitration.  *Id.*  In response to the arbitration award finding that Worldwide was not the correct party to the claim, New attempted to substitute himself as the plaintiff in the California Action.  *Id.*; ECF No. 25 at 7-8.

On February 12, 2024, New's request to substitute himself as the plaintiff in the California Action was denied and the case was dismissed.  *See* ECF No. 38-1.  The California

Court found that New "made the strategic decision not to add himself as an interested party even when Chase challenged Worldwide Film's standing to sue." *Id.* at 4. The court also noted that New's argument was not an "understandable mistake" and that "[e]very action taken by New and Worldwide Film was a deliberate choice. . . . The [c]ourt finds all these decisions were purely strategic." *Id.* at 4

### b. The Indiana Action

On October 24, 2023, New, who was a resident of Indiana when the fraud occurred, filed an action against Chase in Indiana state court "to preserve his individual claims against a statute of limitations defense since New was not yet substituted into the California Litigation." ECF No. 25 at 8; *see also* Compl. ¶ 12. The matter was then removed to U.S. District Court for the Northern District of Indiana.[4] *See* ECF No. 25 at 8; see also ECF No. 12 at 8. Chase filed a motion to dismiss or stay Indiana federal court. *See* ECF No. 12 at 8. On February 16, 2024, New voluntarily dismissed his claim in Indiana. ECF No. 39 at 1. On April 16, 2024, the court granted sanctions against Plaintiff, after determining the Indiana action was "duplicative" of the action here.[5] *See* ECF No. 55-1.

### c. The Matter before the Court

On the same day that the Indiana action was filed (i.e., October 24, 2023), New also filed this action in the Southern District of New York "to preserve his claims against the statute of

---

[4] *See New v. JPMorgan Chase Bank, N.A.*, No. 23 Civ. 1016, 2024 WL 1663371 (N.D. Ind. 2024).

[5] The Court takes judicial notice of the court's order. "Courts may take judicial notice of public documents and matters of public record," *Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018), including "document[s] filed in another court, not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings," *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *accord Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992). Accordingly, the Court **DENIES** as moot Plaintiff's letter-motion to strike, ECF No. 52.

limitation defense, and a lack of personal jurisdiction defense since Chase is headquartered in New York City." ECF No. 25 at 8; *see generally* Compl.[6]  On January 16, 2024, Chase filed a motion to dismiss (or, alternatively, to compel arbitration).  *See* ECF No. 11.  On January 30, 2024, New filed an opposition to Chase's motion to dismiss and, separately, a motion to stay proceedings.  *See* ECF Nos. 25, 26.  On March 12, 2024, Chase also filed a motion to transfer the case to the Central District of California.  *See* ECF No. 46.  On February 16, 2024, New withdrew his motion to stay proceedings in this Court.  ECF No. 39 at 1.  The motions to dismiss and to transfer are fully briefed.  *See* ECF No. 37; Def.'s Transfer Reply, ECF No. 51.  On May 8, 2024, Plaintiff filed a motion for oral argument.  *See* ECF No. 58.

## LEGAL STANDARDS

### I.    Motion to Transfer

#### a.    *First-Filed Rule*

The first-filed rule "states that, in determining the proper venue, '[w]here there are two competing lawsuits, the first suit should have priority.'"  *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).  "Th[e] rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum."  *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).  "Proper application of the first-filed rule requires that the first and subsequently filed case(s) have either identical or substantially similar parties and claims.  Importantly, application of the rule does not require *identical* parties, but merely requires substantial overlap."  *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (emphasis in original).

---

[6] On October 25, 2023, the case was assigned to the undersigned.  *See* October 25, 2023 Min. Entry.

There are two exceptions to the first-filed rule: (1) "where special circumstances warrant giving priority to the second suit," and (2) "where the balance of convenience favors the second-filed action." *Wausau*, 522 F.3d at 275; *accord N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112. "Special circumstances include manipulative or deceptive behavior on the part of the first-filing plaintiff." *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112. "Where special circumstances are not present, a balancing of conveniences is necessary." *Wausau*, 522 F.3d at 276. The Second Circuit has held that "factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.*

"The court should take whichever action it deems proper to avoid duplication of judicial effort, void vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication." *Wyler-Wittenberg*, 899 F. Supp. 2d at 247. This disposition is not a "rigid test, but require[s] instead the district court consider the equities of the situation when exercising its discretion." *Id.* (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). "[A] district court has broad discretion to dismiss a lawsuit that is duplicative of a prior action." *Thomas v. Apple-Metro, Inc.*, No. 14 Civ 4120, 2015 WL 505384, at *2 (S.D.N.Y. Feb. 5, 2015).

### b. *Section 1404(a)*

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404 "gives district courts wide latitude to decide whether to transfer venue." *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013).

Absent consent from both parties, "[a] motion to transfer venue requires a two-part inquiry: first, whether the action to be transferred might have been brought in the transferee court; and second, whether considering the convenience of parties and witnesses, and the interest of justice, a transfer is appropriate." *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). "The party seeking to transfer [the] case carrie[]s the burden of making out a strong case for transfer, and courts evaluate such motions under a clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 18 (S.D.N.Y. 2012) (citing *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 113-14).

To assess whether the transfer is an appropriate exercise of the court's discretion, the court engages in a balancing test considering various factors.

> Among these factors are: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*Wausau*, 522 F.3d at 275. "Courts also frequently consider: (8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." *Nosirrah Mgmt., LLC v. EVmo, Inc.*, No. 21 Civ. 10529, 2023 WL 35028, at *2 (S.D.N.Y. Jan. 4, 2023); *see also N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 113 (setting forth similar factors).

## DISCUSSION

### I.    The First-Filed Rule is Inapplicable

Defendant seeks to transfer this motion to the United States District Court for the Central District of California, where Plaintiff first filed a similar action. Plaintiff argues that the first-

filed rule does not apply because the California Action has been dismissed. Pl.'s Opp'n 15, ECF No. 50. Chase relies on non-binding caselaw to argue that the first-filed rule still applies when the "original case is dismissed." Def.'s Transfer Reply 5. In the Second Circuit, however, the first-filed rule only applies where there is *concurrent* federal litigation. *See, e.g., Sunwealth Glob. HK Ltd. v. Pinder Int'l, Inc.*, 2021 WL 1145245, at \*14-15 (S.D.N.Y. Mar. 23, 2021) (collecting cases) (emphasis added). Courts in this Circuit have declined to apply the first-filed case in circumstances similar to the one before us, "for a basic reason—there are no longer competing lawsuits." *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 545 (E.D.N.Y. 2018).

If not dismissed, the California case would have been considered the first-filed case. But because it has been dismissed, the first-filed rule does not apply here. But because "the first-filed doctrine does not supersede the inquiry into the balance of convenience required under § 1404," *Recoton Corp. v. Allsop Inc.*, 999 F. Supp. 574, 576 (S.D.N.Y. 1998), the Court turns to that inquiry next.

## II.    Transfer under Section 1404

A transfer of venue is appropriate in this case. Courts conduct a two-step inquiry to determine whether they should transfer to another district. First, the court must assess "whether the action could have been brought in the transferee district." *Everlast*, 928 F. Supp. 2d at 743. If so, the court determines "whether transfer would be an appropriate exercise of the [c]ourt's discretion," *id.*, considering nine factors described, *supra. Keitt v. New York City*, 882 F. Supp. 2d 412, 458-59 (S.D.N.Y. 2011); *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 112 (setting forth similar factors). The Court considers each factor and as explained below, determines that the balance of those factors favors transfer to the Central District of California.

### a. Venue in the Transferee District

Venue is proper in the Central District of California because, among other things, "act[s] or transaction[s] constituting the [alleged] violation occurred" in that district, 15 U.S.C. § 78aa(a), and Chase transacted business from those districts during the period that New's Complaint puts at issue.  As Plaintiff concedes, "some of the operative facts occurred in California."  Pl.'s Opp'n 17.  Indeed, the alleged misrepresentations, omissions, and breaches of duties by Chase employees Torres and Davido occurred at the Chase Woodland Hills, California branch.  *See* Compl. ¶ 15; ECF No. 12-6 ¶ 3; ECF No. 12-7 ¶¶ 5, 26.  The California action, brought by Worldwide (of which Plaintiff is the principal), was brought in the Central District of California on the basis of these facts; Plaintiff cannot credibly argue that venue is improper there.

Nevertheless, Plaintiff argues that, if he had brought the case in the Central District of California, Chase would have raised personal jurisdiction challenges, as Chase "has argued that it is a citizen of the State of Ohio."  Pl.'s Opp'n 16.  Plaintiff also points out that Chase opposed his previous efforts to substitute himself as a plaintiff in the California action.  *Id.* at 17.  Plaintiff's arguments, however, do not convince the Court that venue in the Central District of California would have been improper.  California is a proper venue because actions or omissions "arise out of or relate to" defendant's "contacts with the forum."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021).[7]

### b. Multi-factor Balancing Test

#### 1. Convenience of Witnesses

This factor weighs in favor of transfer to California, as there are at least seven (7)

---

[7] In the event that, after transfer, Chase were to argue that the Central District of California lacks personal jurisdiction over it, the fact that Chase sought (and is now being granted) transfer to that district will surely not go unnoticed.

material witnesses based in California, while none of the witnesses are in New York.  "The convenience of witnesses is an important consideration, and has often been described as the single most important § 1404(a) factor." *Everlast*, 928 F. Supp. at 743.  "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *Lowinger v. Rocket One Cap., LLC*, No. 23 CV 9243, 2024 WL 2882622, at *4 (S.D.N.Y. June 5, 2024).  Chase argues that "[v]irtually all" of the key witnesses were in California and not New York.  Def.'s Transfer Mem. 12, ECF No. 47.  And it also has represented that it is likely "one or more of the California-based non-party witnesses would be unwilling to appear and testify at a trial in New York."  Def.'s Transfer Reply 11.

Plaintiff notes that some key California-based witnesses, including Davido and Torres, have already been deposed, *see* Pl.'s Opp'n 20, but—even setting aside other California-based witnesses—this factor still favors transfer given the possibility of live testimony for any in-person proceedings in court.  *See TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 406 n.6 (S.D.N.Y. 2001) (determining this factor favors transfer because "even when videotaped, [depositions] are generally no substitute for live testimony").

In sum, because several of the key witnesses are in California and none are in New York, the convenience of witnesses factor weighs towards California.  *See, e.g.*, *GMT Corp. v. Quiksilver*, 2 Civ. 2229, 2002 WL 1788016, at *3 (S.D.N.Y. Aug. 1, 2002) (granting transfer where non-movant cannot "show that any of the operative facts occurred in New York or that any parties or major witnesses are located here.").

### 2.  Convenience of the Parties

The convenience of the parties is a neutral factor here.  Given that the previous suit was in California, New cannot argue that transferring to California would inconvenience him.  And

while Chase's headquarters is in New York, it is the party requesting transfer; California is not inconvenient to the Defendant.  Pl.'s Opp'n 19.  Accordingly, this is a neutral factor.

### 3.  Locus of Operative Facts

This factor supports transfer to California.  The parties agree that none of the operative facts occurred in New York.  *See* Pl.'s Opp'n 17-18; Def.'s Reply 7-8.  "To determine where the locus of operative facts lies, courts look to the site of events from which the claim arises." *Lowinger*, 2024 WL 2882622, at *6.  "[T]he locus of operative facts for a claim under § 16(b) is the location in which facts peculiar to the transactions involved occurred, such as the location where the stock at issue was purchased or where pertinent investment decisions were made." *Nosirrah Mgmt.*, 2023 WL 35028, at *3.

Here, the "center of gravity of the litigation," *Pippins v. KPMG LLP*, No. 11 Civ. 377 2011 WL 1143010, at *5 (S.D.N.Y. Mar. 21, 2011), skews towards California.  New argues that "[w]hile it is true that some of the operative facts occurred in California, it is not the only relevant location."  Pl.'s Opp'n 17.  Specifically, the communications forming a basis of New's claims were made via electronic mail and telephone and involved Cherry (Illinois), New (Indiana), McConley (Florida) and Van Eman (Oklahoma)."  *Id.*  But none of these locations are in New York.  As between the two options, there is no genuine dispute that California was the locus of more operative facts, favoring transfer to California.

### 4.  Unwilling Witnesses

This factor slightly favors transfer to California.  Under Federal Rule of Civil Procedure 45(c)(1)(A)-(B), a district court generally cannot issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of state.  Chase argues that "[v]irtually all" its witnesses are based in California and "Chase might well lose the benefit of their live testimony at

12

a trial in the Southern District of New York, where no witness lives or works." Def.'s Transfer Mem. 12. But Chase does not specifically identify any unwilling witnesses, other than "[t]he two convicted fraudsters [who] are serving long prison terms in Florida and Oklahoma." *Id.* "Neither party has shown persuasively that compulsory service of process for third party witnesses is likely to be more problematic in either forum. This factor, therefore, carries little weight in the balance of convenience, tipping slightly, if at all, in favor of Defendants because they have identified witnesses in the proposed transferee forum." *Everest Cap. Ltd. v. Everest Funds Mgmt., LLC*, 178 F. Supp. 2d 459, 467 (S.D.N.Y. 2002). Accordingly, this factor weighs slightly in favor of transfer.

### 5. *Availability of Relevant Documents or Proof*

This factor is neutral. Most documents or proof related to this case are in California, not New York. However, "in today's era of electronic discovery the location of the documents is not a significant factor in the convenience analysis." *Document Techs., Inc. v. West*, No. 17 Civ. 2405, 2017 WL 1743938, at *3 (S.D.N.Y. Apr. 24, 2017). Therefore, this factor weighs neutrally.

### 6. *Relative Means of the Parties*

This factor is neutral. In determining whether the relative means of the parties weighs in favor of transfer, "a court should determine whether a party's financial situation would meaningfully impede its ability to litigate this case in either forum." *AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 371 (S.D.N.Y. 2009). "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp.

128, 135 (S.D.N.Y. 1994). There is no such disparity here. Neither party argues that litigating in either forum would put them in undue hardship. *See* Def.'s Mem. 12; Pl.'s Opp'n 22. "As there is no evidence to conclude that Plaintiff's financial situation would meaningfully impede [his] ability to pursue [his] claims in [California], the [c]ourt accords little weight to the financial disparity between the parties." *Holiday Image LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, No. 14 Civ. 8660, 2015 WL 366931, at \*5 (S.D.N.Y. Jan. 28, 2015). Worldwide (of which New is the principal) originally filed in California, suggesting that litigating in California would not place undue hardship on New.

### 7. *Forum's Familiarity with Governing Law*

This factor is neutral. "The forum's familiarity with the governing law is typically to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 398 (S.D.N.Y. 2014). Neither forum would be most familiar with the appropriate governing law, therefore this factor is neutral.

### 8. *Plaintiff's Choice of Forum*

This factor is neutral. "Typically, a plaintiff's choice of forum warrants substantial deference." *Iconic IP Holdings, LLC v. Gerrit's Brands, Inc.*, No. 21 Civ. 1068, 2021 WL 7543607, at \*6 (E.D.N.Y. May 21, 2021). But "[t]he weight normally accorded to the plaintiff's choice of forum is diminished substantially where plaintiff has chosen a forum which is neither his home nor the place where the cause of action arose." *Pippins v. KPMG LLP*, 2011 WL 1143010, at \*5. Here, New is not a resident of New York nor is it the place the cause of action arose. At the time of the alleged theft, he was a resident of Indiana. ECF No. 1 at ¶ 12. As of December 5, 2019, New was a resident of Florida. ECF No. 12-6 at ¶ 7. Currently, New does

not "have a certain place [he] consider[s] a permanent residence" and does not own a home. ECF No. 51-5 at 3.

Worldwide (again, of which Plaintiff is the principal), initially chose to litigate this suit in California. Thus, while Plaintiff has filed this case in New York, "New York is not Plaintiff's original choice of forum, instead he chose to litigate this suit in California. The Court therefore reasonably assumes that litigating in [California] will be of no substantial burden to Plaintiff." *Lau v. Wells Fargo & Co.*, No. 20 Civ. 3870, 2021 WL 1198964, at *4 (S.D.N.Y. Mar. 30, 2021).

As New himself states, he "filed this action [in New York] to preserve his claims against a statute of limitation defense, and a lack of personal jurisdiction defense since Chase is headquartered in New York City," and not because of his connections to New York or because of the location of the operative facts. ECF No. 25 at 8. Accordingly, this Court gives little weight to New's choice of forum in New York. This factor is neutral.

### 9. *Trial Efficiency and Interest of Justice*

If an action is still in its infancy, "there will be no efficiency lost in its transfer to the [Central] District of [California]." *Alpha Indus. v. Alpha Clothing Co. LLC*, No. 21 Civ. 87, 2021 WL 2688722, at *8 (S.D.N.Y. June 30, 2021); *cf. Baduria v. Sealift Holdings, Inc.*, 451 F. Supp. 3d 248, 256-57 (E.D.N.Y. 2020) (finding that the factor of trial efficiency favored transferring to a case in another district that had already had the case for three years, issued multiple rulings and appeals, was in arbitration, and closer to the ultimate resolution of the case). "[T]rial efficiency and the interests of justice weigh against transfer if transfer would substantially inconvenience the plaintiff, impair the plaintiff's ability to prosecute the action, or prejudice the plaintiff in some way. This factor weighs in favor of transfer if transfer would aid the movant without disadvantaging the non-movant." *Nosirrah Mgmt.*, 2023 WL 35028, at *4.

15

First, courts in this Circuit have repeatedly found that "[w]here the natural focus of the case is in the transferee forum, transfer to that district is consistent with the interest of justice." *Alpha Indus*, 2021 WL 2688722, at *9. Here, there is no dispute that the focus of this case has been in California.

Second, "[i]n bringing this action, plaintiff[] transparently attempt[s] to relitigate rulings in from the [California] action that are unfavorable to them" and therefore, "[t]he interest of justice factor likewise favors transfer of the case." *Baduria*, 451 F. Supp. 3d at 257.

## CONCLUSION

For the reasons discussed herein, the Defendant's motion to transfer is **GRANTED**. The Defendant's motion to dismiss is **DENIED** without prejudice to renewal, following transfer.[8] Plaintiff's letter-motion for oral argument is **DENIED** as moot. As noted, *supra* note 5, Plaintiff's letter-motion to strike, ECF No. 52, is **DENIED** as moot.

The Clerk of Court is respectfully directed to terminate ECF Nos. 11, 46, 58, to transfer this action to the United States District Court for the Central District of California, and to close this case on this Court's docket.

SO ORDERED.

Dated: September 18, 2024
      New York, New York

_____
          DALE E. HO
      United States District Judge

---

[8] This opinion is limited only to the question of transfer and does not express any views on the merits of this action.

16